UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DAVID MOON,

                    Plaintiff,                          Case No. 1:24-cv-1138

v.                                                      Honorable Ray Kent

UNKNOWN MENDEZ et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss, for failure to state a claim, Plaintiff's claims against Defendants Czerwyck, Staley, Dewy, Gillespie, Arredondo, Ramirez, Serritos, Winwright, Brooke, Novak, Rowland, Rockwell, Cooley, Buchin, and Athearns under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), Plaintiff's Fourteenth Amendment equal protection and due process claims, Plaintiff's claims under the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA), and Plaintiff's retaliation claims against Defendants House, Lobdell, Matthews, Thompson, and Frias. Plaintiff's Eighth Amendment claims against Defendants Thompson, Frias, Normington, Battle, Addis, Haddon, Brokaw, Macauley, Anderson, Meyers, Harrison, Mendez, Pepper, and

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Darnell, and her First Amendment retaliation claims against Defendants Addis, Meyers, and Anderson, and supplemental state law claims remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Macomb Correctional Facility (MRF) in New Haven, Macomb County, Michigan. The events about which she complains, however, occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan.

Plaintiff sues Corrections Officers Unknown Mendez, Unknown Meyer, Unknown Anderson, Unknown Czerwyck, Unknown House, Unknown Lobdell, Unknown Gillespie, Unknown Winwright, Unknown Pepper, Unknown Staley, Unknown Dewy, and Unknown Parties named as other unknown correction officers. Plaintiff also sues Sergeants Unknown Rockwell, Unknown Darnell, Unknown Cooley, Unknown Arredondo, and Unknown Matthews; Lieutenants Unknown Ramirez and Unknown Serritos; Captain Unknown Rowland; Prison Counselors Unknown Thompson and Unknown Frias; Resident Unit Managers Unknown Normington, Unknown Battle, and Unknown Buchin; Grievance Coordinator Unknown Brooke; Hearings Investigator Unknown Novak; Case Manager Unknown Bullen; Mental Health Worker Unknown Athearns; Administrative Staff Member Unknown Alexander; Inspectors/Prison Rape Elimination Act (PREA) Coordinators Unknown Harrison and Unknown Fuller; Assistant Deputy Wardens Unknown Addis and Unknown Haddon; Deputy Warden Unknown Brokaw; and Warden Matthew Macauley. Plaintiff sues all Defendants in their individual capacities.

Plaintiff alleges that she is a Gender Dysphoric (GD) Intersex Woman and that her pronouns are She/Her/Hers. (Compl., ECF No. 1, PageID.6.) Plaintiff's chosen name is Azelie

4

Delaina Moon. (*Id.*) Plaintiff's appearance and mannerisms are feminine, and she is currently receiving treatment for GD, PTSD, Hypothyroidism, and an unspecified skin condition. (*Id.*)

Plaintiff states that she was transferred to IBC in December of 2023, after being subjected to unconstitutional conduct as described in her previous lawsuit which is currently pending in this Court: *Moon v. Leon et al.*, Case No. 1:24-cv-1067 (W.D. Mich.). (*Id.*) Plaintiff was improperly classified under PREA guidelines at a previous facility and despite bringing the issue to the attention of Defendants Thompson, Frias, Normington, Battle, Addis, Haddon, Brokaw, and Macauley over the course of several months, the issue was never investigated or rectified. Plaintiff states that Defendants Thompson, Frias, Normington, Battle, Addis, Haddon, Brokaw, and Macauley were aware of the risk associated with improperly classifying and housing transgender and intersex prisoners and did so knowingly as a result of Plaintiff's prior grievances. (*Id.*)

Plaintiff was subsequently assaulted and pressured into a sexual relationship with her cellmate. (*Id.*) When Plaintiff complained to Defendants House, Lobdell, Matthews, Thompson, and Frias, as well as to "the Inspector," she was threatened with a trip to the hole if she did not stop complaining. (*Id.*) Plaintiff withdrew her complaint. (*Id.*)

For several months Plaintiff submitted kites and made verbal requests to have her classification corrected so that she could stop being victimized by cellmates. (*Id.*) Plaintiff sent kites to Defendants Normington and Battle, and she finally sent a letter to Defendants Addis, Haddon, Brokaw, and Macauley. (*Id.*, PageID.6-7.) Plaintiff eventually filed a grievance regarding the matter. (*Id.*, PageID.7.)

In March of 2024, Plaintiff was attacked by another inmate, and when she reported this to Defendants House and Lobdell, they told her to handle the issue herself. (*Id.*) Plaintiff sent a kite

to the Inspector's office. Defendant Addis then called out Plaintiff's assailant and told him that Plaintiff had reported him. (*Id.*) No protection was provided for Plaintiff. (*Id.*)

The following day, Defendants Normington and Thompson took Plaintiff into an office and told her that her clothing choices "offend decent people." (*Id.*) Plaintiff told Defendant Normington and Thompson about the most recent assault, but they took no action to protect Plaintiff. (*Id.*)

On August 14, 2024, Plaintiff was walking to lunch when she was abruptly stopped by Defendant Rockwell, who told Plaintiff that she could not wear her shorts to the dining hall. Plaintiff asked why because at least forty other prisoners were wearing the same shorts. Defendant Rockwell said that he did not care about what other prisoners were doing, but only what Plaintiff did. Defendant Rockwell then said that Plaintiff must not know who he was. (*Id.*) Plaintiff returned to her cell to change clothes where Defendant Anderson told her that if she left the housing unit to go back to the dining hall, she would receive a misconduct ticket. Therefore, Plaintiff had to go without eating lunch. (*Id.*)

On August 17, 2024, Defendant Anderson told Plaintiff to watch herself if she continued with the grievance process against staff at IBC. (*Id.*) On August 23, 2024, Plaintiff was being harassed by the same inmate who had assaulted her previously, which caused her to suffer a panic attack. Plaintiff eventually went to her room and was lying on her bed when this inmate ran in and assaulted her a second time. (*Id.*) Plaintiff asserts that staff were made aware of the incident when they reviewed the camera footage the following morning but chose not to protect Plaintiff. Plaintiff states that the camera footage was reviewed by Defendants Anderson, Meyers, Thompson, and Frias. (*Id.*)

On August 26, 2024, Defendant Anderson assaulted another GD prisoner named Dalton Willard. (*Id.*) Approximately two days later, Defendant Anderson sexually harassed GD prisoner Daniel Hutchinson. (*Id.*, PageID.7–8.) Defendant Anderson called prisoner Hutchinson a "faggot" and told that prisoner that he could do whatever he wanted to GD prisoners because no one cares whether they are harmed or not. (*Id.*, PageID.8.)

On August 30, 2024, Defendant Meyers told Plaintiff that he was going to write her a misconduct ticket for being down the hallway. Plaintiff asked why since she is a hearing-impaired aid and her job is to ensure that deaf and hard of hearing prisoners receive their non-emergent notifications. (*Id.*) Defendant Meyers told Plaintiff that he would not write the misconduct if she dropped her grievance and stopped wearing "all that gay shit." (*Id.*) Plaintiff refused and wrote a grievance on Defendant Meyers. (*Id.*)

On August 31, 2024, Defendant Anderson reviewed Plaintiff on the Class III misconduct ticket issued by Defendant Meyers and stated that he would throw the misconduct out if Plaintiff gave up on her grievance. (*Id.*) Plaintiff refused and Defendant Anderson told Plaintiff that staff at IBC did not like "faggots" and would find a way to dismiss her grievances. (*Id.*) Plaintiff filed a grievance on Defendant Anderson, and Defendant Brooke forwarded the complaint to Defendant Harrison, who created a PREA complaint. Plaintiff states that such a complaint requires that the alleged victim and perpetrator be separated pending the outcome of an investigation, but that Defendant Harrison chose not to comply with the PREA safety regulations. (*Id.*)

On September 3, 2024, Defendant Anderson harassed Plaintiff verbally regarding her genital status and sexual orientation. (*Id.*) Plaintiff filed a grievance on Defendant Anderson for harassment and on Defendants Harrison, Fuller, Haddon, Brokaw, and Macauley for failure to protect Plaintiff from retaliation. (*Id.*) Plaintiff later discovered that Defendant Anderson had

written Insolence and Out of Place tickets on Plaintiff accusing Plaintiff of saying, "Hey Anderson, I bet I got a bigger dick than you. I got pretty princess faggot dick and I bet it's bigger than yours." (*Id.*)

Later that day, Plaintiff had a hearing with Defendant Thompson regarding the August 30, 2024, Out of Place misconduct ticket written by Defendant Meyers, which was dismissed due to due process violations. (*Id.*, PageID.9.) Defendant Thompson violated due process and denied Plaintiff a copy of the hearing report. (*Id.*) On September 4, 2024, Plaintiff told Defendant Matthews that Defendant Anderson was retaliating against her and that she feared that the investigation into the September 3 misconduct tickets would lead to further acts of retaliation. Defendant Matthews failed to act to protect Plaintiff. (*Id.*) Later that day, Defendants Anderson and Meyers informed Plaintiff that they were going to "railroad her this time." (*Id.*) Plaintiff stated that further acts of retaliation would be reported and that she would see them in court. (*Id.*) Plaintiff later told another inmate that staff members are not allowed to kill or rape her and that the worst they could do was to put her in segregation. (*Id.*) Defendant Anderson overheard Plaintiff's comment, at which point he and Defendant Meyers took Plaintiff into custody to be transported to segregation. (*Id.*) While Plaintiff was being taken to segregation, staff confiscated all of Plaintiff's legal documents and allowed other inmates to steal items from Plaintiff's cell. (*Id.*)

Prior to being placed in a cell in segregation, Plaintiff was ordered to submit to a strip search. Defendant Mendez leered at Plaintiff and rubbed his hands together while saying, "Let's see some tits!" (*Id.*) Plaintiff refused to strip so Defendant Mendez walked away. (*Id.*) Defendant Cooley came to ask why Plaintiff was refusing to strip and Plaintiff explained about Defendant Mendez. (*Id.*, PageID.9-10.) Defendant Cooley said, "He doesn't want to look at you he's not into fags," which caused Plaintiff to begin crying. (*Id.*, PageID.10.) Defendant Pepper then arrived and

ordered Plaintiff to strip or suffer a Class I misconduct for Disobeying a Direct Order. (*Id.*) Plaintiff was afraid of being sent to level 4 so she complied. (*Id.*) As Plaintiff was removing her bra, Defendant Pepper said, "those are probably the nicest tits I've seen on one of you boys in a while," which caused Plaintiff to feel humiliated, degraded, and objectified. (*Id.*)

Plaintiff was then escorted to cell number 27 where she noticed live electrical wires hanging from the light fixture and sewage and feces backed up in the toilet. Plaintiff also saw that there was brown brackish water coming from the sink and sharp rusted edges on the locker where the door had been ripped off months prior. Plaintiff immediately lodged a complaint with Defendants Mendez, Pepper, Staley, Dewy, and Gillepsie. Plaintiff also complained to Defendants Arredondo, Darnell, Ramirez, Serritos, and Ms. Alexander, all of whom worked in the Warden's office. (*Id.*) No corrective action was taken. (*Id.*)

Later that day, Defendant Darnell reviewed a Threatening Behavior misconduct with Plaintiff, who explained that the misconduct should have been a Class II infraction and that she was not guilty regardless. (*Id.*) Defendant Darnell said that Plaintiff needed to sit in the filth of cell number 27 where she belonged and when Plaintiff complained about the conduct of Defendants Pepper and Mendez, Defendant Darnell said that no one would believe the word of a "fag" over the officers. (*Id.*) That night, Plaintiff became thirsty and drank from the sink, which caused her to suffer from cramps and diarrhea for several days. (*Id.*)

On September 5, 2024, Plaintiff told non-party Qualified Mental Health Provider (QMHP) Mullen that she planned to kill herself. Plaintiff was then removed from the cell and was placed in the shower area to be strip searched prior to placement in suicide watch. (*Id.*, PageID.10-11.) While in the shower area, Defendant Mendez ordered Plaintiff to strip and threatened her with a Class I misconduct and a beating if she refused. Plaintiff agreed and Defendant Mendez told her to use

the shower to get "wet and sexy" for him. (*Id.*, PageID.11.) Plaintiff ran the shower and got her tank top and underwear wet and Defendant Mendez said, "that's what I'm talking about b\*\*ch, now strip." (*Id.*) Defendant Mendez told Plaintiff that he would "f\*\*k her with a bowling pin for the shit she pulled in 3 block" if he could, but he could not. (*Id.*) Defendant Mendez then ordered Plaintiff to "fist" herself and threatened to come into the shower if Plaintiff did not. (*Id.*) Plaintiff complied and suffered an injury as a result. Defendant Mendez told Plaintiff that if she told anyone about the incident, he would have her food poisoned and she would die. Plaintiff believed him and remained silent about the incident until she was transferred to another facility. (*Id.*)

Defendant Novak later interviewed Plaintiff about her misconduct tickets and Plaintiff asked him to interview several witnesses, but this request was denied because she did not know the witnesses' full MDOC numbers. (*Id.*) Plaintiff was also denied the ability to provide a written statement to the Administrative Law Judgebecause she was in suicide watch and could not have pens or paper. (*Id.*) Plaintiff claims that when she told Defendant Novak about the grievances and copies of misconduct tickets she had just received in the institutional mail, Defendant Novak ended the interview and Plaintiff later discovered that her legal documents were confiscated. (*Id.*)

That evening Defendant Winwright used his electronic round marker to viciously hammer on Plaintiff's door every fifteen minutes, preventing Plaintiff from sleeping and subjecting her to psychological torture. (*Id.*) When Plaintiff asked Defendant Winwright about his reason for banging on the door, Defendant Winwright asked Plaintiff wanted to play "paperwork games" and said that he could "play games too." (*Id.*)

On September 10, 2024, Plaintiff was found guilty of a lesser charge of Insolence. (*Id.*, PageID.12.) Defendants Buchin, Haddon, and Athearns convened a Security Classification Committee (SCC) meeting with the intent to punitively transfer Plaintiff. (*Id.*) Defendant Buchin

informed Plaintiff that she would be transferred and that Defendant Normington assisted in the decision. (*Id.*)

On September 11, 2024, Defendant Rowland came to Plaintiff's cell to conduct a Class II misconduct hearing in violation of Plaintiff's right to have a hearing in the hearing room or in an office. (*Id.*) Defendant Rowland would not allow Plaintiff to present a defense and found Plaintiff guilty, sentencing her to 30 days loss of privileges. (*Id.*) Defendant Rowland prevented Plaintiff from filing an appeal when he failed to place the misconduct in Plaintiff's prisoner record or counselor file. (*Id.*)

Plaintiff asserts that on September 12, 2024, and September 13, 2024, Defendant Brooke refused to process Plaintiff's Step II grievance appeals. Plaintiff states that she corrected a clerical error on one of the appeal forms and Defendant Brooke threatened to write a forgery misconduct on her. (*Id.*)

Plaintiff claims that Defendants retaliated against her in violation of the First Amendment, treated her with deliberate indifference and failed to protect her in violation of the Eighth Amendment, deprived her of her property without due process in violation of the Fourteenth Amendment, violated her Fourteenth Amendment equal protection rights, and violated her rights under the ADA, the RA, and Michigan's Elliott-Larsen Civil Rights Act (ELCRA). (*Id.*, PageID.13–14.) Plaintiff seeks damages. (*Id.*, PageID.14.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S.

825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). For a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he or she faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he [or she] is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

### 1. Failure to Protect

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer*, 511 U.S. at 833. Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). To show liability under the Eighth Amendment for a claim based on a failure to prevent harm to a prisoner, a plaintiff must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm facing the plaintiff. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 32; *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766–67.

13

Plaintiff alleges that she was improperly classified under PREA guidelines at a previous facility and despite bringing the issue to the attention of Defendants Thompson, Frias, Normington, Battle, Addis, Haddon, Brokaw, and Macauley over the course of several months, the issue was never investigated or rectified. Plaintiff contends that Defendants Thompson, Frias, Normington, Battle, Addis, Haddon, Brokaw, and Macauley were aware of the risk associated with improperly classifying and housing transgender and intersex prisoners and did so knowingly as a result of Plaintiff's prior grievances. (ECF No. 1, PageID.6.) Plaintiff alleges that because of her improper classification, she was pressured into a sexual relationship with her cellmate but when she complained to Defendants House, Matthews, Thompson, and Frias, she was threatened with a trip to the hole if she did not stop complaining. (*Id.*) Plaintiff withdrew her complaint, but subsequently kited and made verbal requests to Defendants Normington and Battle to have her classification changed. Plaintiff also sent a letter to Defendants Addis, Haddon, Brokaw, and Macauley and eventually filed a grievance. (*Id*. PageID.6–7.) Taking Plaintiff's allegations as true, as is required at this stage of the proceedings, the Court finds that Plaintiff has sufficiently pleaded Eighth Amendment claims against Defendants House, Matthews, Thompson, Frias, Normington, Battle, Addis, Haddon, Brokaw, and Macauley.

Plaintiff was attacked by another inmate in March of 2024, and reported the attack to Defendant House and Defendant Lobdell, who told Plaintiff to handle it herself and refused to provide Plaintiff with any protection. (*Id.*, PageID.7.) The next day, Plaintiff told Defendants Normington and Thompson about the assault, but they failed to provide protection and merely told her that her clothing choices were offensive. (*Id.*) Plaintiff was again assaulted by the same inmate on August 23, 2024. Plaintiff asserts that the incident was caught on security camera footage and that Defendants Anderson, Meyers, Thompson, and Frias reviewed the footage, but took no action

to protect Plaintiff. (*Id.*) Plaintiff also claims that Defendant Anderson verbally sexually harassed her on more than one occasion and was known to verbally abuse other GD and homosexual inmates. (*Id.*, PageID.8.) Plaintiff asserts that Defendant Harrison did not comply with PREA safety regulations and failed to separate her from Defendant Anderson, who was the subject of a PREA complaint. (*Id.*) These allegations, taken as true, are similarly sufficient to state Eighth Amendment claims against Defendants House, Lobdell, Normington, Thompson, Anderson, Meyers, Thompson, Frias, and Harrison.

### 2.    Harassment and Conditions of Confinement

Plaintiff asserts that she was subjected to a variety of harassment and mistreatment because of her status as a GD inmate. "Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment. . . . This is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citing *Farmer*, 511 U.S. at 848–49 (discussing inmate abuse); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (same); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (abuse by guards). However, in the context of claims against prison officials, the Sixth Circuit repeatedly has held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See, e.g., Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* 76 F. App'x 24, 27 (6th Cir. 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).

Moreover, the Sixth Circuit has held that "isolated, brief, and not severe" instances of sexual harassment, without more, do not give rise to Eighth Amendment violations. *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (finding that harassing comments, even coupled

with one minor instance of sexualized touching during a search, fall short of an Eighth Amendment violation), *abrogated in other part by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Violett*, 76 F. App'x at 27 (an offer of sexual favors is not sufficient to state Eighth Amendment claim); *Johnson v. Ward,* No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) ("Johnson's allegation that Ward made an offensive sexual remark to him does not rise to the level of a constitutional violation [as such is merely verbal abuse]."). Other courts have agreed. *See, e.g., Davis v. Goord,* 320 F.3d 346, 353 (2d Cir. 2003); *Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir. 1996); *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir. 1986).

In contrast, the Sixth Circuit has held that ongoing, coercive verbal harassment may rise to sexual abuse that violates the Eighth Amendment. *Rafferty*, 915 F.3d at 1095. The *Rafferty* court found an Eighth Amendment violation when a prison official sexually harassed a prisoner by repeatedly demanding that the prisoner expose herself and masturbate while the official watched. The court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

As noted above, Plaintiff alleges that on September 4, 2024, prior to being placed in a cell in segregation, Defendant Mendez leered at Plaintiff and rubbed his hands together while saying, "Let's see some tits!" (Compl., ECF No. 1, PageID.9.) Plaintiff refused to strip and when Plaintiff reported the incident to Defendant Cooley he said that Defendant Mendez did not want to look at Plaintiff because he was not "into fags." (*Id.*, PageID.9–10.) Defendant Pepper then arrived and ordered Plaintiff to strip and as Plaintiff was removing her bra, Defendant Pepper said, "those are probably the nicest tits I've seen on one of you boys in a while," which caused Plaintiff to feel humiliated, degraded, and objectified. (*Id.*, PageID.10.)

Plaintiff was then placed in a filthy cell with live electrical wires and feces backed up in the toilet, as well as brackish water in the sink, and her complaints about the condition of the cell were ignored by Defendants Mendez, Pepper, Staley, Dewy, Gillepsie, Arredondo, Darnell, Ramirez, and Serritos. (*Id.*) Plaintiff was forced to drink from the filthy sink, which caused her to become ill. (*Id.*) Later the same day, while reviewing a ticket on Plaintiff, Defendant Darnell told Plaintiff that she needed to sit in the filth of her cell and that no one would believe the word of a "fag." (*Id.*, PageID.10.) The next day, after Plaintiff threatened to kill herself and was removed from the cell, Defendant Mendez told her to get "wet and sexy" for him in the shower and that he would "f\*\*k her with a bowling pin for the shit she pulled in 3 block" if he could. (*Id.*, PageID.11) Defendant Mendez then ordered Plaintiff to "fist" herself and threatened to come into the shower if Plaintiff did not. (*Id.*) As with the prior Defendants, these allegations, taken as true, are sufficient to state Eighth Amendment claims against Defendants Mendez, Pepper, and Darnell.

However, with respect to Defendants Staley, Dewy, Gillespie, Arredondo, Ramirez, and Serritos, Plaintiff fails to allege any specific facts showing that these individuals actually received her complaints or that were personally involved in the decision to expose her to unsafe conditions. While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555. The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The court need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Therefore, the Court will dismiss Plaintiff's claims against Defendants Staley, Dewy, Gillespie, Arredondo, Ramirez, and Serritos.

Moreover, with respect to Defendant Cooley, Plaintiff's only allegation is that Defendant Cooley told Plaintiff that Defendant Mendez did not want to look at Plaintiff because he was not into fags. Similarly, Plaintiff alleges that on August 14, 2024, Defendant Rockwell harassed Plaintiff for Plaintiff's clothing choices and ordered Plaintiff to leave the dining hall, ultimately causing Plaintiff to miss one meal. As noted above, the Sixth Circuit has held that "isolated, brief, and not severe" instances of sexual harassment, without more, do not give rise to Eighth Amendment violations. *Jackson*, 158 F. App'x at 662. Nor does the deprivation of a single meal on one occasion rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered). Therefore, Plaintiff's Eighth Amendment claims against Defendants Cooley and Rockwell are properly dismissed.

Plaintiff asserts that Defendant Winwright harassed her by banging on her door every fifteen minutes all night on September 5, 2024, which prevented her from sleeping and constituted psychological torture. (*Id.*, PageID.11.) "There is no doubt that '[e]xcessive noise in a prison can state a valid Eighth Amendment claim.'" *Kimball v. Bureau of Prisons*, No. 4:13CV225, 2013 WL

3098900, at *8 (N.D. Ohio June 19, 2013) (quoting *Green v. Strack*, No. 94–17214, 1995 WL 341544, at *1 (9th Cir. June 8, 1995)). However, "high levels of noise are not, without more, violations of the Eighth Amendment." *Grubbs v. Bradley,* 552 F. Supp. 1052, 1123 (M.D. Tenn. 1982) (citation omitted).

Cases finding an Eighth Amendment violation based on excessive noise have typically "involved incessant noise throughout the day and night, *which at times was significantly beyond acceptable decibel levels and could have resulted in possible hearing loss.*" *Kimball*, 2013 WL 3098900, at *8 (emphasis added) (citing *Sterling v. Smith*, No. CV606–103, 2007 WL 781274, at *3 (S.D. Ga. Mar. 8, 2007); *Antonelli v. Sheehan*, 81 F.3d 1422, 1433 (7th Cir. 1996); *Toussain v. McCarthy,* 597 F. Supp. 1388, 1410 (N.D. Cal. 1984), *rev'd in part on other grounds*, 801 F.2d 1080, 1110 (9th Cir. 1986)). Plaintiff alleges that she was not able sleep on the night of September 5, 2024, but does not allege that the banging on the cell door so excessive or pervasive as to pose an objectively serious risk of hearing loss or pain. Being subjected to a few hours of loud noises that are annoying or inconvenient fails to support an actionable violation of the Eighth Amendment. *Finley v. Salmi*, No. 2:17-CV-149, 2019 WL 7602174, at *6 (W.D. Mich. Aug. 29, 2019), *report and recommendation adopted,* No. 2:17-149, 2019 WL 4941960 (W.D. Mich. Oct. 8, 2019), *aff'd,* 827 F. App'x 575 (6th Cir. 2020). Therefore, Plaintiff fails to state a claim against Defendant Winwright.

### B.    Fourteenth Amendment Equal Protection Claim

Plaintiff references an alleged violation of her right to equal protection. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must

show "intentional and arbitrary discrimination" by the state; that is, she must show that she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). Here, Plaintiff fails to allege any facts suggesting that others who were similarly situated were treated differently. Though Plaintiff alleges that she is a gender-dysphoric, intersex woman and has been treated poorly, Plaintiff does not allege how she believes she was treated *unequally*. Accordingly, the Court will dismiss Plaintiff's equal protection claim.

### C.    Due Process

Plaintiff claims that Defendants Czerwyck, Anderson, Meyers, Thompson, Brooke, Novak, and Rowland violated her procedural due process rights by thwarting the administrative remedy process and/or denying her access to her property. (Compl., ECF No. 1, PageID.13.) Plaintiff states that these defendants interfered with her ability to appeal grievances and misconducts when they confiscated the pertinent documents. (*Id.*)

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the

procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Plaintiff fails to allege facts showing that any of her misconduct charges and convictions affected the duration of Plaintiff's sentence or resulted in conditions which constituted an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of her sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000[2], can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply

---

[2] *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=956376 (last visited on December 19, 2024).

a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that she suffered a "significant and atypical deprivation." Plaintiff states that she was placed in a segregation cell on September 4, 2024, but on September 5, 2024, she was removed from that cell and placed on suicide watch after she threatened to kill herself. (ECF No. 1, PageID.9–11.) Plaintiff also alleges that she received 30 days loss of privileges. (*Id.*, PageID.12.) Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only

22

periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Plaintiff's confinement in segregation for 1 day is less than the 60-day period in *Joseph* that the Sixth Circuit held was *not* atypical and significant. Thus, Plaintiff's confinement in segregation did not trigger a right to due process.

In addition, if Plaintiff's confinement in segregation does not implicate a protected liberty interest, it follows that the 30 days loss of privileges do not implicate such an interest. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs under the Fourteenth Amendment. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Moreover, "as the Constitution and federal

law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69 F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989)). Consequently, Plaintiff's loss of privileges did not trigger a right to due process.

Nor did the decision of Defendants Buchin, Haddon, Athearns, and Normington to punitively transfer Plaintiff violate her due process rights. Prisoners do not have a liberty interest in remaining at a particular prison facility, and they have no justifiable expectation that they will remain at a particular prison. *Montanye v. Haymes*, 427 U.S. 236, 243 (1976).

To the extent that Plaintiff claims that Defendants Czerwyck, Anderson, Meyers, Thompson, Brooke, Novak, and Rowland interfered with her ability to exhaust her grievance remedies, the Court notes that Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' alleged interference with the grievance process did not deprive her of due process.

Finally, to the extent that Plaintiff is complaining of the confiscation of her legal documents, Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, she must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained her burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to her. First, a prisoner who incurs a loss through no fault of his or her own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Apr. 26, 2021). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Mar. 27, 2017). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth

25

Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford her complete relief for the deprivation, either negligent or intentional, of her personal property. Accordingly, Plaintiff's due process claims regarding the confiscation of property will be dismissed.

###     D.     ADA and RA Claims

Plaintiff alleges that Defendants have violated her rights as a gender-dysphoric, intersex prisoner. She seeks to bring claims under the ADA and the RA. The ADA and Section 504 of the RA "prohibit public or federally funded entities, including prisons, from discriminating against disabled individuals while operating services or programs." *Finley v. Huss*, 102 F.4th 789, 819–20 (6th Cir. 2024) (internal citations omitted).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Therefore, to state a claim under the ADA, a plaintiff must show that he or she is a "qualified person," that she has a "disability," and that she has been denied a "service, program, or activity" of the state or subjected to discrimination.

Similarly, Section 504 of the RA protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates, *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998), and the RA has also been found to apply to state prisons and inmates. *See, e.g.*, *Wright v. N.Y. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir.

2016) (discussing that "[b]oth the ADA and the RA undoubtedly apply to state prisons and their prisoners" (citation omitted)). The proper defendant for Title II ADA claims and RA claims is the public entity or an official acting in his or her official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted).

Here, Plaintiff sues Defendants in their individual capacities only and does not name the public entity or any official acting in his or her official capacity. Because Plaintiff may not pursue ADA and RA claims against Defendants in their individual capacities, any intended ADA and RA claims will be dismissed.

### E.    First Amendment Retaliation Claims

Plaintiff asserts that Defendants retaliated against her for filing grievances and PREA allegations. (Compl., ECF No. 1, PageID.12–13.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Initially, Plaintiff states that when she complained to Defendants House, Lobdell, Matthews, Thompson, and Frias about being assaulted and pressured into a sexual relationship with her cellmate following her transfer to IBC in December of 2023, she was threatened with

segregation if she did not stop complaining. (*Id.*, PageID.6.) An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). A specific threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights, *see, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542.

In this case, the alleged threat to have Plaintiff sent to segregation was entirely vague. Plaintiff fails to even specify who made the threat. Nor was the threat accompanied by any actual conduct, such as the writing of a misconduct ticket or a Notice of Intent. The Court concludes that such a vague statement would not deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g.*, *Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Shisler v. Golladay*, No. 2:19-cv-80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) (Golladay's threat that the ticket would be the least of the plaintiff's worries was "simply too vague" to support a First Amendment retaliation claim); *Dahlstrom v. Butler*, No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) ("Krause's threat[--to 'get' a prisoner who files a grievance on Krause and 'steps out of line'--] is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct."); *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *7 (W.D. Mich. Dec. 19, 2018) ("Defendant's vague threat to 'get' Plaintiff does not carry the same seriousness . . . ."); *Johnson v. Govern*, No. 2:17-cv-125, 2018 WL 6321548, at *2 (W.D. Mich. Dec. 4, 2018)

("Govern's alleged threat to 'put a case' on Johnson . . . was too vague to constitute adverse action."); *Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at *11 (W.D. Mich. Apr. 6, 2017) ("Defendant DeMaeyer told Plaintiff that complaining would get him into a lot of trouble . . . . Such a vague threat of unspecified harm falls short of adverse action."). Accordingly, Plaintiff's retaliation claims against Defendants House, Lobdell, Matthews, Thompson, and Frias based on this conduct are properly dismissed.

Plaintiff asserts a retaliation claim against Defendant Anderson stating that on August 17, 2024, Defendant Anderson told Plaintiff to watch herself if she continued with the grievance process against staff at IBC. (*Id.*, PageID.7.) On August 23, 2024, Plaintiff was harassed and assaulted by the same inmate who had previously assaulted her and Defendant Anderson and other staff chose not to protect Plaintiff following the incident despite seeing the incident during review of camera footage. (*Id.*) The Court concludes that Plaintiff's assertion that Defendant Anderson "chose not to protect her," without more, is too conclusory to support a retaliation claim. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Plaintiff states that in March of 2024, she sent a kite to the Inspector's office after being attacked by an inmate, and Defendant Addis responded by telling Plaintiff's assailant that Plaintiff had reported him. Plaintiff was not provided with protection. (*Id.*, PageID.7.). Taking Plaintiff's statement regarding this event as true, the Court finds that, at this stage of the proceedings, Plaintiff has alleged sufficient facts to state a claim for First Amendment retaliation against Defendant Addis.

On August 30, 2024, Defendant Meyers told Plaintiff that he would not write a misconduct on her for being down the hallway, if she dropped her grievance and stopped wearing "all that gay

shit." (*Id.*, PageID.8.) Plaintiff refused and wrote a grievance on Defendant Meyers. (*Id.*) The next day, Defendant Anderson reviewed Plaintiff on the Class III misconduct ticket issued by Defendant Meyers and stated that he would throw the misconduct out if Plaintiff gave up on her grievance. (*Id.*) Plaintiff refused, and Defendant Anderson told Plaintiff that staff at IBC did not like "faggots" and would find a way to dismiss her grievances. (*Id.*) The misconduct ticket was eventually dismissed because of due process violations. (*Id.*, PageID.9.) The Court concludes that, at this stage of the proceedings, Plaintiff has alleged sufficient facts to state a claim for First Amendment retaliation against Defendants Meyers and Anderson based on this conduct.

Plaintiff states that on September 5, 2024, while on suicide watch, Defendant Winwright used his electronic round marker to bang on Plaintiff's door every fifteen minutes and told Plaintiff that if she wanted to play "paperwork games," he could "play games too." (*Id.*, PageID.11.) The Court notes that such conduct on one night amounts to no more than harassment. The *Thaddeus-X* court held that minor harassment is insufficient to constitute adverse action, because recognition of such a standard would "trivialize the First Amendment." *Thaddeus* 175 F.3d at 397 (citing *Bart*, 677 F.2d at 625).

### F.    State Law Claims

Plaintiff also asserts violations of Michigan's ELCRA. The Court notes that claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Any assertion that Defendants violated state law therefore fails to state a claim under § 1983.

To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court notes that in determining whether to retain supplemental jurisdiction,

"[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted). Because Plaintiff continues to have pending federal claims, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss, for failure to state a claim, Plaintiff's claims against Defendants Czerwyck, Staley, Dewy, Gillespie, Arredondo, Ramirez, Serritos, Winwright, Brooke, Novak, Rowland, Rockwell, Cooley, Buchin, and Athearns under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court will also dismiss, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), Plaintiff's Fourteenth Amendment equal protection and due process claims, Plaintiff's claims under the ADA and RA, and Plaintiff's retaliation claims against Defendants House, Lobdell, Matthews, Thompson, and Frias.

Plaintiff's Eighth Amendment claims against Defendants Thompson, Frias, Normington, Battle, Addis, Haddon, Brokaw, Macauley, Anderson, Meyers, Harrison, Mendez, Pepper, and

Darnell, First Amendment retaliation claims against Defendants Addis, Meyers, and Anderson, and supplemental state law claims remain in the case.

An order consistent with this opinion will be entered.


Dated:   January 28, 2025                                /s/ Ray Kent
                                                         Ray Kent
                                                         United States Magistrate Judge